UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JOSHUA RAYMOND ARMENDARIZ, | Case No. 20-CV-0464 (PJS/HB) |
| Plaintiff, | |
| v. | ORDER |
| CHRIS ROVNEY, | |
| Defendant. | |

Joshua Raymond Armendariz, pro se.

Tessa M. McEllistrem and Joseph E. Flynn, JARDINE, LOGAN & O'BRIEN, PLLP, for defendant.

This matter is before the Court on plaintiff Joshua Raymond Armendariz's objection to the October 12, 2021, Report and Recommendation ("R&R") of Magistrate Judge Hildy Bowbeer.  Judge Bowbeer recommends granting defendant Chris Rovney's motion for summary judgment on the ground of qualified immunity.  The Court has conducted a de novo review.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Based on that review, the Court overrules Armendariz's objection, adopts Judge Bowbeer's thorough and careful R&R, and dismisses Armendariz's complaint.

I.  BACKGROUND

The facts were fully described by Judge Bowbeer in her R&R and are only briefly summarized here:  Armendariz was arrested on June 28, 2015, by a Blue Earth County

Sheriff's Deputy. At the time of his arrest, Armendariz was carrying $19,636 in currency, which was seized. A search of the vehicle that Armendariz was using turned up a number of items that had been reported stolen out of vehicles the previous night, including a bank bag marked "Vetter Sales & Service." Armendariz told officers that the cash that he was carrying belonged to him; later, however, Gerald Vetter (the owner of Vetter Sales & Service) told officers that most of the cash had been stolen from his truck. On June 30, 2015—two days after his arrest—Armendariz was charged with receiving stolen property by Rovney, the Blue Earth County Attorney.

About a week later, a Property and Evidence Specialist at the Mankato Department of Public Safety released $15,705 of the seized cash to Vetter after Vetter declared under penalty of perjury that he was the "true and legal owner of" the cash. Def.'s Ex. C at 1 [ECF No. 89-1 at 8]. The cash was released to Vetter pursuant to Rovney's authority and in compliance with the procedure set forth in Minn. Stat. § 609.523, subd. 3. *See* Def.'s Mem. Supp. Summ. J. at 5, 9 [ECF No. 88 at 5, 9]; Def.'s Ex. C [ECF No. 89-1 at 8–10]. That statute prescribes the procedure that law-enforcement agencies must follow when returning allegedly stolen property to its alleged owner. The statute provides:

> A law enforcement agency which is holding property over which a person is alleged to have exerted unauthorized control or to have otherwise obtained unlawfully may return that property to its owner if:

(1) the appropriately identified photographs are filed and retained by the law enforcement agency;

(2) satisfactory proof of ownership of the property is shown by the owner;

(3) a declaration of ownership is signed under penalty of perjury; and

(4) a receipt for the property is obtained from the owner upon delivery by the law enforcement agency.

Minn. Stat. § 609.523, subd. 3.  Notably, when those four requirements are met, the statute does not require the state to notify the person from whom the property was seized prior to releasing the property to its purported owner.  Armendariz alleges—and Rovney does not dispute—that Armendariz was not provided with notice before (most of) the seized cash was released to Vetter.  See Pl.'s Resp. [ECF No. 102].

II. ANALYSIS

Armendariz alleges that when Rovney released the seized cash to Vetter, Rovney deprived Armendariz of property in violation of the Due Process Clause of the Fourteenth Amendment.  Judge Bowbeer found that Rovney may have violated Armendariz's constitutional rights, but Judge Bowbeer nonetheless recommended granting summary judgment to Rovney because, Judge Bowbeer concluded, Rovney was entitled to qualified immunity.  Armendariz objects to Judge Bowbeer's conclusion.

"Determining whether a state actor is entitled to qualified immunity involves two questions:  First, did the official deprive the plaintiff of a constitutional or statutory

right? If not, he does not need qualified immunity, as he is not liable under § 1983. If so, we ask the second question: Was that right so clearly established at the time that a reasonable official would have understood that his conduct was unlawful under the circumstances?" *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). The Court will address these questions in turn.¹

### A. Constitutional Violation

"[T]he central meaning of procedural due process" is that individuals must be given notice and an opportunity to be heard before the government permanently deprives them of their property. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citation omitted); *see also Wright v. Beck*, 981 F.3d 719, 727 (9th Cir. 2020) ("[O]ne of due process's central and undisputed guarantees is that, before a government permanently deprives a person of a property interest, that person will receive—at a minimum—notice. . . . Notice is so critical because it enables the opportunity to be heard."). While the Supreme Court has recognized that post-deprivation remedies may under some circumstances satisfy due process, those circumstances are generally limited to deprivations that were caused by random or unauthorized acts. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982) ("[T]he Court's decisions suggest that,

---

¹Under *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Court has the discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

absent 'the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a post-deprivation hearing here would be constitutionally inadequate."); *Lathon v. City of St. Louis*, 242 F.3d 841, 844 (8th Cir. 2001) (rejecting availability of post-deprivation remedies where deprivation was "not a random or unauthorized act"); *Winters v. Bd. of Cnty. Comm'rs*, 4 F.3d 848, 857 (10th Cir. 1993) ("[A]n adequate post-deprivation remedy relieves due process concerns only for random and unauthorized deprivations of property."); *see also Walters v. Wolf*, 660 F.3d 307, 314 (8th Cir. 2011) ("[T]his court has emphasized the insufficiency of postdeprivation remedies for state-authorized deprivations."). *But see Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 928–29 (8th Cir. 2016) (noting that a post-deprivation remedy may satisfy due process, even when the deprivation occurs pursuant to an established policy or procedure, so long as the post-deprivation remedy is adequate).

It is also well-settled that the Due Process Clause protects not only the interests of the *owners* of property, but also the interests of the *possessors* of property. *See Fuentes*, 407 U.S. at 84 (holding that plaintiffs had a protected interest in chattels they possessed); *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998) ("It is also well established that possessory interests in property invoke procedural due process protections."); *Matthias v. Bingley*, 906 F.2d 1047, 1052 (5th Cir.) (holding that persons from whom property is seized "have colorable claims to the property" "by virtue of [their] possession"

sufficient for due process purposes), *opinion modified on denial of reh'g*, 915 F.2d 946 (5th Cir. 1990); *Dunbar Corp. v. Lindsey*, 905 F.2d 754, 760 (4th Cir. 1990) ("[I]t is plain that the Due Process Clause does not safeguard only the rights of undisputed ownership. . . . [A]s long as there [i]s some dispute as to the right of continued possession, a possessor is entitled to due process." (cleaned up)); *see also PPS, Inc. v. Faulkner Cnty.*, 630 F.3d 1098, 1102 (8th Cir. 2011) (concluding pawn shop had possessory interest in allegedly stolen property sufficient to establish a Fourth Amendment claim).

Clearly, then, Armendariz had a right under the Due Process Clause to notice and an opportunity to be heard before Rovney released the seized currency to Vetter.[2]

---

[2]This is not a case in which post-deprivation remedies can satisfy Armendariz's right to due process. As Judge Bowbeer explained, "Rovney does not claim his actions were 'random and unauthorized,' and has not offered evidence showing as a matter of law a compelling state interest that required return of the money to Vetter so quickly that predeprivation process would have been impossible, or even impractical." R&R at 20–21 [ECF No. 126 at 20–21]. *See Mickelson*, 823 F.3d at 928 (citing Supreme Court precedent holding that "a post-deprivation hearing is inadequate only in the absence of the necessity of quick action by the state or the impracticality of providing any predeprivation process").

Moreover, even if a post-deprivation remedy could satisfy Armendariz's right to due process in theory, such a post-deprivation remedy must be *adequate*. *Id.* at 929. Independent tort actions such as those identified by Rovney (e.g., replevin and conversion) have consistently been held to be constitutionally *in*adequate. *See, e.g.*, *Logan*, 455 U.S. at 436 (1982); *Matthias*, 906 F.2d at 1057 ("When a government can provide a predeprivation hearing, the availability of a postdeprivation tort remedy does not satisfy the Due Process Clause."). And as Judge Bowbeer correctly noted, the only other post-deprivation remedy suggested by Rovney—Minn. Stat. § 626.04—was unavailable to Armendariz because that procedure applies only to property still in the possession of the seizing law-enforcement agency. Here, the property in dispute had

Whether Armendariz could ultimately establish that he owned the seized currency is beside the point; under the Due Process Clause, Rovney was required to give Armendariz the *opportunity* to establish that he owned the currency before releasing it to Vetter.³  *Cf. Alexandre v. Cortes*, 140 F.3d 406, 412 (2d Cir. 1998) ("The system established by the City Rules, authorizing the property clerk to release a vehicle without giving notice to the arrestee . . . and creating no procedure by which prisoners can contest the City's handing over of vehicles to lienholders, does not comport with the requirements of the Due Process Clause . . . ."); *Winters*, 4 F.3d at 856 ("Appellant must be given the opportunity to present her case for ownership on the merits regardless of the likelihood for success.  Thus, the fundamental issue is not who is the true owner of the [property], but whether the Sheriff's Department, in disposing of the [property], afforded the appellant adequate procedural due process through notice and hearing."); *Lavicky v. Burnett*, 758 F.2d 468, 473 (10th Cir. 1985) (even where plaintiff had been convicted of larceny, he was entitled to a hearing to determine the ownership of the allegedly stolen property before it was returned to the victim).

---

already been released to a third-party (Vetter).

   ³Several other jurisdictions have statutes or ordinances that are similar to Minn. Stat. § 609.523, subd. 3 but that also require notice before seized property is released. *See, e.g.*, Okla. Stat. tit. 22, § 1321; Cal. Penal Code § 1413; N.Y. Penal Law § 450.10; Fla. Stat. § 812.061; Ga. Code Ann. § 17-5-50.

It is true, as Rovney points out, that he followed the procedure set forth in Minn. Stat. § 609.523, subd. 3 for releasing allegedly stolen property to its alleged rightful owner. But that simply means that, as applied to this case, Minn. Stat. § 609.523, subd. 3 is unconstitutional. The Due Process Clause requires that, before being permanently deprived of property that was lawfully seized from his possession, an arrestee must receive notice and an opportunity to establish that he is the lawful owner of (or otherwise entitled to possess) the seized property. Section 609.523, subd. 3 is constitutionally infirm in failing to provide for notice and in failing to provide for an opportunity to be heard.

For these reasons, the Court finds that Rovney deprived Armendariz of property in violation of the Due Process Clause of the Fourteenth Amendment.

### B. Qualified Immunity

That is not the end of the inquiry, however. Although Rovney violated Armendariz's constitutional rights, Rovney is nevertheless entitled to qualified immunity "insofar as [his] conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[F]or a right to have been clearly established at the time of the alleged violation, there must have existed circuit precedent that involves sufficiently similar facts . . . or, in the absence of binding precedent, a robust consensus of cases of

persuasive authority constituting settled law." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021) (cleaned up).  Reliance on a state statute whose constitutionality has never been called into question "is generally a paradigmatic example" of a situation "that entitles an officer to qualified immunity." *Ness v. City of Bloomington*, 11 F.4th 914, 921 (8th Cir. 2021).  This is because "[w]hen a legislative body establishes a law, the enactment 'forecloses speculation by enforcement officers concerning its constitutionality,' unless the law is 'so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.'" *Id.* (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)).

No court has ever considered—let alone decided—whether the procedure set forth in Minn. Stat. § 609.523, subd. 3 is constitutional in any context, let alone in the context addressed in this case.  That fact, in and of itself, comes close to establishing that Rovney acted reasonably in relying on § 609.523, subd. 3 when he authorized the release of the cash to Vetter.  *See also Brown v. City of Bloomington*, No. CV 15-11(DSD/DTS), 2018 WL 3614125, at *10 n.18 (D. Minn. July 27, 2018) (rejecting plaintiff's due process claim based on officer's failure to comply with the terms of a warrant, noting that § 609.523 "allows for the return of allegedly stolen property to the owner," and expressing no doubts about the constitutionality of the statute).

In addition, while some other jurisdictions include a notice requirement in their return-of-seized-property laws, *see supra* note 3, Minnesota's statute is not an outlier in failing to require notice before the state releases allegedly stolen property to its apparent owner. *See, e.g.*, Kan. Stat. Ann. § 22-2512; Neb. Rev. Stat. § 29-820; Del. Code Ann. tit. 11, § 2311. For these reasons, the Court cannot conclude that § 609.523, subd. 3 as applied to Armendariz was "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *DeFillippo*, 443 U.S. at 38.

Because it was not clearly established at the time that Rovney released the seized cash to Vetter pursuant to Minn. Stat. § 609.523, subd. 3 that his action violated Armendariz's rights under the Due Process Clause, Rovney is entitled to qualified immunity, and Armendariz's individual-capacity claim against him must be dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES plaintiff's objection [ECF No. 127] and ADOPTS the R&R [ECF No. 126]. IT IS HEREBY ORDERED THAT:

1. Defendant's motion for summary judgment [ECF No. 86] is GRANTED.

2. Plaintiff's complaint [ECF No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  December 16, 2021                                     s/Patrick J. Schiltz
                                                                                   Patrick J. Schiltz
                                                                                   United States District Judge